AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Devices and Media in the custody of the FBI, seized from<br>Jerry Brown on September 4, 2016. | )<br>)<br>)<br>)<br>) |

Case No. 16- mj - 105

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* a red Hewlett Packard (HP) laptop, model 15-1272wm, serial number 5CD6121T8B, (2) a green Sandisk USB flash drive, (3) a white Cruzer USB flash drive, (4) a red PNY USB flash drive, (5) a blue PNY USB flash drive, (6) an Ativa 1GB SD memory card, (7) a Memorex SD memory card, and (8) a red Doro flip phone, serial number CDC30605Y04458, IMEI 352009054485508

located in the _____ Middle _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized):*

Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A | Material involving sexual exploitation of minors. |

The application is based on these facts:

See attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA David Harris, Federal Bureau of Investigaitons
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 10/13/2016 _____

_____
*Judge's signature*

City and state: _____ Baton Rouge, Louisiana _____

Hon. Erin Wilder-Doomes, Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, David Harris, being duly sworn, depose and state as follows:

### INTRODUCTION

1.      This affidavit is submitted in support of an application for a search warrant authorizing the search of (1) a red Hewlett Packard (HP) laptop, model 15-1272wm, serial number 5CD6121T8B, (2) a green Sandisk USB flash drive, (3) a white Cruzer USB flash drive, (4) a red PNY USB flash drive, (5) a blue PNY USB flash drive, (6) an Ativa 1GB SD memory card, (7) a Memorex SD memory card, and (8) a red Doro flip phone, serial number CDC30605Y04458, IMEI 352009054485508, (hereinafter "DEVICES AND MEDIA").

### AGENT BACKGROUND

2.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since June 2004.   I am currently assigned to the New Orleans Division in the Baton Rouge Resident Agency.   My duties include investigating a variety of criminal violations in the area of violent crimes.   A portion of my duties are dedicated to investigating cases involving crimes against children, child exploitation, and child pornography.   I have gained experience through training at the FBI Academy in Quantico, Virginia, and conducting these types of investigations on a daily basis.   In addition, I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.   Moreover, I am a Federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C §§ 2251 and 2252A, and I am authorized by the Attorney General to request a search warrant.

1

## PURPOSE OF AFFIDAVIT

3.      I am conducting an investigation into possible violations of 18 U.S.C. §§ 2251 and 2252A, relating to material involving the sexual exploitation of minors, by JERRY R. BROWN (BROWN).   The purpose of this application is to search the DEVICES AND MEDIA for evidence more particularly described below and in **Attachment A**, incorporated herein by reference, as evidence, fruits and instrumentalities of criminal activity.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that contraband, evidence, fruits, and/or instrumentalities of the aforementioned federal crimes, that is, images of child pornography, are currently contained on the DEVICES AND MEDIA, which were seized pursuant to BROWN's consent and/or incident to his arrest on September 4, 2016.

5.      The statements contained in this affidavit are based in part on my training and experience, as well as on information provided to me by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a search warrant, and I have not included each and every fact known to me concerning this investigation.   Instead, I have set forth only the facts which I believe are necessary to establish the necessary foundation for the requested warrant.

## DEFINITIONS

6.      The following definitions apply to this Affidavit:

a.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit

2

poses and/or positions.

b. "Child pornography," as used herein, includes the definitions in 18 U.S.C. §§ 2256(8) and 2256(9) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).   See 18 U.S.C. §§ 2252 and 2256(2).

c. "Visual depictions" include undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in permanent format.   See 18 U.S.C. § 2256(5).

d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.   See 18 U.S.C. § 2256(2).

e. "Minor," as defined in 18 U.S.C. § 2256(1), means any person under the age of eighteen years.

3

f.   "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an
electronic, magnetic, optical, electrochemical, or other high speed data processing
device performing logical, arithmetic or storage functions, and includes any data
storage facility or communications facility directly related to or operating in
conjunction with such device."

g.   "Computer hardware," as used herein, consists of all equipment which can
receive, capture, collect, analyze, create, display, convert, store, conceal, or
transmit electronic, magnetic, or similar computer impulses or data.   Computer
hardware includes any data processing devices (including, but not limited to,
central processing units, internal and peripheral storage devices such as fixed
disks, external hard drives, floppy disk drives and diskettes, and other memory
storage devices); peripheral input/output devices (including, but not limited to,
keyboards, printers, video display monitors, and related communications devices
such as cables and connections), as well as any devices, mechanisms, or parts that
can be used to restrict access to computer hardware (including, but not limited to,
physical keys and locks).

h.   "Computer software," as used herein, is digital information which can be
interpreted by a computer and any of its related components to direct the way they
work.   Computer software is stored in electronic, magnetic, or other digital form.
It commonly includes programs to run operating systems, applications, and
utilities.

i.  A cellular telephone (or mobile telephone, or wireless telephone) is a hand held wireless device used for voice and data communications through radio signals. These telephones send signals through networks of transmitter/ receivers, enabling communications with other cellular telephones or traditional "land line" telephones.   A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition, to enable voice communications, cellular telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

j.  The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy

5

diskettes, hard disks, CD-ROMs, digital video disks (DVDs), personal digital
assistants (PDAs), multimedia cards (MMCs), memory sticks, optical disks,
printer buffers, smart cards, memory calculators, electronic dialers,   or electronic
notebooks, as well as digital data files and printouts or readouts from any
magnetic, electrical or electronic storage device).

k.   "Computer passwords and data security devices," as used herein, consist of
information or items designed to restrict access to or hide computer software,
documentation, or data.   Data security devices may consist of hardware,
software, or other programming code.   A password (a string of alpha numeric
characters) usually operates a sort of digital key to "unlock" particular data
security devices.   Data security hardware may include encryption devices, chips,
and circuit boards.   Digitally coded data security software may include
programming code that creates "test" keys or "hot" keys, which perform certain
preset security functions when touched.   Data security software or code may also
encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or
unusable, as well as reverse the progress to restore it.

## COMPUTERS AND CHILD PORNOGRAPHY

7.      Based upon my training and experience, I know that computers and computer
technology have revolutionized the way in which individuals interested in child pornography
interact with each other.   In the past, child pornography was produced using cameras and film
(either still photography or movies).   The photographs required darkroom facilities and a
significant amount of skill in order to develop and reproduce the images.   There were definable

6

costs involved with the production of pornographic images, and to distribute these images on any scale required significant resources and significant risks.   The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public and/or law enforcement.   The distribution of these wares was accomplished through a combination of personal contacts, mailings and telephone calls.

        8.      The development of computers has radically changed the way that child pornographers obtain, distribute and store their contraband.   Computers basically serve five functions in connection with child pornography: access, production, communication, distribution, and storage.

        9.      Child pornographers can now convert paper photographs taken with a traditional camera (using ordinary film) into a computer readable format with a device known as a scanner. Moreover, with the advent, proliferation and widespread use of digital cameras, the images can now be transferred directly from a digital camera onto a computer using a connection known as a USB cable or other device.   Digital cameras have the capacity to store images and videos indefinitely, and memory storage cards used in these cameras are capable of holding hundreds of images and videos.   A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.   Electronic contact can be made to literally millions of computers around the world.

        10.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.   The size of the electronic storage media, that is, the hard disk drive used in home computers has grown tremendously within the last several years. These hard disk drives can store hundreds of thousands of images at very high resolution.

Additionally, removable media such as "flash drives" can store increasingly large numbers of images and videos.   The small size of these devices allows them to be used for storage as well as for transfer from one hard drive to another.

11.     The World Wide Web of the Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

12.     Collectors and distributors of child pornography frequently use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, Hotmail, and Google, among others.   The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats.   A user can set up an online storage account from any computer with access to the Internet.   Evidence of such online storage of child pornography is often found on the user's computer.   Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

13.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.   Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving particular website locations in, for example, "bookmarked" files.   Digital information, images and videos can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).   Often, a computer will automatically save transcripts or logs of electronic communications between its user and other users which have occurred over the Internet.   These logs are

8

commonly referred to as "chat logs." Some programs allow computer users to trade images while simultaneously engaging in electronic communications with each other. This is often referred to as "chatting," or "instant messaging." Based on my training and experience, I know that these electronic "chat logs" often have great evidentiary value in child pornography investigations, as they record communications in transcript form, show the date and time of such communications, and also may show the dates and times when images of child pornography were traded over the Internet. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained on a computer for long periods of time until overwritten by other data.

### CHARACTERISTICS COMMON TO INDIVIDUALS WHO ACCESS WITH INTENT TO VIEW AND/OR PRODUCE, RECEIVE, DISTRIBUTE, OR POSSESS CHILD PORNOGRAPHY

14. Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to access with intent to view, produce, distribute, receive, and possess images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

   a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with

9

children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.  Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.  Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location.   Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.  Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.   These

10

collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.   These individuals may protect their illicit materials by passwords, encryption, and other security measures, save it on a movable device such as CDs, DVDs, flash memory, thumb drives, and removable hard drives, which can be very small in size, including as small as a postage stamp, and easily secreted.

e.   Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/ collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.   This data is typically in digital format, and often maintained on computers and in online storage, email accounts or other online communication accounts.

f.   Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of peer-to-peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest.   Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images.   Individuals who utilize these types of

11

forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

g.   Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.   This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

h.   Increasingly, with faster Internet download speed and the growth of file-sharing networks and other platforms through which individuals may trade child pornography, some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis; however, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.   Furthermore, even in instances in which an individual engages in a cycle of downloading, viewing, and deleting images, a selection of favored images involving a particular child or act are often maintained on the device.

### BACKGROUND AND
### FACTS ESTABLISHING PROBABLE CAUSE

15.   BROWN was previously convicted of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), in the Middle District of Louisiana, Docket #10-54-JJB-CN.   On October 27, 2011, BROWN was sentenced to 18 months in the Bureau of Prisons, followed by 10 years supervised release.   BROWN's federal supervised release commenced on March 8, 2013, and is scheduled to end on March 8, 2023.

16.     As a condition of his federal supervised release, BROWN is prohibited from accessing any online computer services at any location, including employment or education, without prior written approval of the U.S. Probation Office.    This prohibition includes any internet service, bulletin board, or any other public or private computer network.    According to the U.S. Probation Office, BROWN did not have permission to access any online computer services, including the internet.

17.     On or about September 4, 2016, the Livingston Parish Sheriff's Office (LPSO) received a complaint of a suspicious person sitting in a vehicle in the Wal-Mart parking lot located at 34025 La. Highway 16 in Denham Springs, LA.    Upon their arrival on scene, Deputies found BROWN sitting in a vehicle in a dark area away from all other vehicles in the parking lot.    When BROWN observed law enforcement, he reached for the front passenger floorboard in an apparent attempt to conceal some object.    Upon making contact with BROWN, Deputies requested consent to search his vehicle.    In addition, Deputies asked BROWN whether there was anything inside the vehicle that would get him in trouble.    BROWN advised that he had a computer on the front passenger floorboard.    BROWN further explained that he was on federal probation for a child pornography conviction and advised that the computer would get him in trouble.    Thereafter, BROWN gave verbal consent to search.

18.     Deputies recovered a red Hewlett Packard (HP) laptop, model 15-1272wm, serial number 5CD6121T8B, inside a black computer case located on the front passenger floorboard of BROWN's vehicle.    A Deputy opened the pictures folder on the laptop and observed multiple photographs of minors engaging in sexually explicit conduct.    BROWN was then advised of his rights per Miranda.    BROWN advised that he had a problem and admitted to downloading the

13

photographs from a website.   When asked whether he had anything else, BROWN stated that he had a memory flash drive in his pocket.   BROWN gave verbal consent to search the flash drive and surrendered a green Sandisk USB flash drive to law enforcement.   A Deputy inserted the flash drive into the laptop to examine its contents.   Upon reviewing folders of the flash drive, the deputy observed approximately 1,000 images and videos of minors engaging in sexually explicit conduct.   BROWN was then placed under arrest.

19.     During the search incident to arrest, Deputies recovered (1) a white Cruzer USB flash drive, (2) a red PNY USB flash drive, (3) a blue PNY USB flash drive, (4) an Ativa 1GB SD memory card, and (5) a Memorex SD memory card inside the computer case.   Deputies also recovered a red Doro flip phone, serial number CDC30605Y04458, IMEI 352009054485508, from BROWN's person.

20.   BROWN was transported to the Livingston Parish Courthouse for booking.   Once there, BROWN was again advised of his rights per Miranda.   Thereafter, BROWN signed a computer and electronic device consent to search form and also a Miranda rights waiver form before being interviewed.

21.     On September 21, 2016, your affiant received (1) a red Hewlett Packard (HP) laptop, model 15-1272wm, serial number 5CD6121T8B, (2) a green SanDisk USB flash drive, (3) a white Cruzer USB flash drive, (4) a red PNY USB flash drive, (5) a blue PNY USB flash drive, (6) an Ativa 1GB SD memory card, (7) a Memorex SD memory card, and (8) a red Doro flip phone, serial number CDC30605Y04458, IMEI 352009054485508, from LPSO. Thereafter, your affiant secured the aforementioned DEVICES AND MEDIA in evidence at the FBI's Baton Rouge Resident Agency, 18134 East Petroleum Drive, Baton Rouge, Louisiana

14

70809, which is located in the Middle District of Louisiana. The items have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the FBI. While the FBI might already have all necessary authority to examine the DEVICES AND MEDIA for evidence more particularly described in **Attachment A**, your affiant seeks this warrant out of an abundance of caution to be certain that an examination of these items will comply with the Fourth Amendment and other applicable laws.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTERS, CELLULAR TELEPHONES, AND MOBILE DEVICES

22.    Based on my knowledge, training, and experience, I know that computers, cellular telephones, and mobile devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on computers, cellular telephones, and mobile devices. This information can sometimes be recovered with forensics tools.

a. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of

15

the files which were uploaded or downloaded.   Such information is often maintained indefinitely until overwritten by other data.

23.    As further described in **Attachment A**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the computers, cellular telephones, and mobile devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on computers, cellular telephones, and mobile devices because:

   a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.   Forensic evidence on cellular telephones, smart phones, and computers can also indicate who has used or controlled a particular device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.   A person with appropriate familiarity with how a cellular telephone, smart phone, and computer works may, after examining the forensic evidence in its proper context, be able to draw conclusions about how the cellular telephones, smart phones, and computers were used, the purpose of their use, who used them, and when.

   d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

16

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on cellular telephones, smart phones, and computers is evidence may depend on other information stored on the cellular telephones, smart phones, and computers and the application of knowledge about how the electronic device or computer behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a cellular telephone, smart phone, or computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.     Searches and seizures of evidence from cellular telephones, smart phones, and computers commonly require agents to download or copy information from the devices and their components, or seize most or all computer items (computer hardware, computer software, and computer-related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.   This is almost always true because of the following two reasons:

a.  Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information.   Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.   This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search.   This

17

sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching cellular telephones, smart phones, and computers for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.   The vast array of computer hardware and software available requires even forensics experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.   The search of cellular telephones, smart phones, and computers is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.   Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

25.     In order to fully retrieve data from cellular telephones, smart phones, and computers, the analyst needs all magnetic storage devices as well as the central processing unit (CPU).   In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues.   In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

18

## CONCLUSION

26.     Based on the foregoing, there is probable cause to believe that federal criminal statutes cited herein have been violated, and that fruits, evidence, and instrumentalities of these offenses are located on the DEVICES AND MEDIA.

27.     Therefore, I respectfully request a search warrant be issued by this Court authorizing the FBI to search and otherwise conduct a forensic examination of the DEVICES AND MEDIA.

28.     Because this warrant seeks only permission to examine items already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

29.     Your Affiant is aware that the recovery of data by a computer forensic analyst takes significant time, much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process.   For this reason, the "return" inventory will contain a list of only the tangible items to be searched.   Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

_____
DAVID HARRIS, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION


Subscribed and sworn to before me this  13th  day of October, 2016, at Baton Rouge, Louisiana.

_____
HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A

For (1) a red Hewlett Packard (HP) laptop, model 15-1272wm, serial number 5CD6121T8B, (2) a green SanDisk USB flash drive, (3) a white Cruzer USB flash drive, (4) a red PNY USB flash drive, (5) a blue PNY USB flash drive, (6) an Ativa 1GB SD memory card, (7) a Memorex SD memory card, and (8) a red Doro flip phone, serial number CDC30605Y04458, IMEI 352009054485508, (hereinafter "DEVICES AND MEDIA") which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, and/or instrumentalities designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251 and 2252A:

1.      Evidence of who used, owned, or controlled the DEVICES AND MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2.      Evidence of software that would allow others to control the DEVICES AND MEDIA, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

3.      Evidence of the lack of such malicious software;

4.      Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

5.      Evidence of the attachment to the DEVICES AND MEDIA of other storage

21

devices or similar containers for electronic evidence;

6. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the DEVICES AND MEDIA;

7. Evidence of the times the DEVICES AND MEDIA were used;

8. Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES AND MEDIA;

9. Records of or information about Internet Protocol addresses used by the DEVICES AND MEDIA;

10. Records of or information about the DEVICES AND MEDIA's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

11. Computer software, computer related documentation, computer passwords and data security devices, that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography or information pertaining to an interest in child pornography;

12. Child pornography and child erotica; and

13. Records, information, and items relating to violations of the statutes described above, including:

   a. Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

22

     b.  Records and information relating to sexual exploitation of children, including correspondence and communications.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.   Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

23